FILED
JAN 2 3 2006
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| **JERRY BRIM, MIKE PRINCE, AND MIKE TUTTLE,** | § | **CIVIL ACTION NO** |
| **PLAINTIFFS** | § | |
| | § | |
| **V.** | § | **MO-05-CV-018** |
| | § | |
| **EXXONMOBIL PIPELINE CO.** | § | |
| **DEFENDANT** | § | |

**PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ALTERNATIVELY MOTION TO DISMISS WITHOUT PREJUDICE**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Jerry Brim, Mike Prince, and Mike Tuttle ("Plaintiffs") file this Response and Brief in Opposition to Defendant ExxonMobil Pipeline Co. ("Defendant")'s Motion for Summary Judgment, alternatively Motion to Dismiss without Prejudice, and would respectfully show the Court as follows:

SUMMARY

Material fact issues preclude summary judgment on Plaintiffs' claims for violation of ERISA where a similarly situated individual received a severance package that they were denied. Alternatively, in the event that the Court determines that summary judgment is appropriate on Plaintiffs' federal claims, the Court should decline to exercise supplemental jurisdiction over their state law claims and instead dismiss without prejudice so that Plaintiffs may refile in Midland County, where they reside and where a substantial part of the events or omissions giving arise to the claim occurred. This response is based on the summary judgment proof which is contained in the Appendix and supported by the Affidavit of Holly B. Williams, filed contemporaneously and incorporated by reference.



26 | 27

## STATEMENT OF FACTS

1. Plaintiffs are long time employees of Defendant. Although Plaintiffs worked on both Defendant's crude and natural gas liquids (NGL) systems in West Texas, they spent a majority of their time working on the crude system, prior to the sale of the crude system.[1]

2. On or about November 13, 2003, Defendant made a presentation to its employees regarding a Purchase and Sale Agreement ("PSA") with Occidental Petroleum Corporation ("Oxy").[2] Plaintiffs attended this meeting. Pursuant to the terms of the PSA, Defendant sold crude oil assets to Oxy. Defendant represented that a severance plan was in place for employees.[3] In order to obtain severance, an employee was required to apply and be rejected by Oxy, and not be transferred to another position by Defendant.[4]

3. Defendant has produced only certain portions of the purchase and sale agreement with Oxy. Such document has been designated "highly confidential" and is being submitted under seal. Under the terms of the Agreement, Defendant agreed to provide Oxy with a list of all seller employees who are directly engaged in the physical operation of the assets as of the effective date."[5] The list submitted did not include Plaintiffs' names, although it did include the name of JoAnn Yocum.[6] The PSA allows Oxy to make offers, in its sole discretion, to one or more of the employees listed.[7] Even beyond the terms of the PSA, however, Defendant and Oxy agreed that Oxy was prohibited from interviewing or hiring employees not on the list, "employees who were pulled for NGL."[8] They also agreed that Oxy employees on the ground

[1] Tab 1, Brim Deposition at p. 30, ln. 1-3 (75/25); Tab 2, Prince Deposition at p. 48, ln. 1-3; Tab 3, Tuttle II Deposition at p. 10, ln. 15-19.
[2] Tab 5, Employee Presentation.
[3] Tab 5 at Def. 2512-13.
[4] *Id.* and Tab 1, Brim Deposition, p. 20, ln. 24- p. 91, ln. 3
[5] Tab 9 at Def. 002651.
[6] Tab 9 at Def. 002657.
[7] Tab 9 at Def. 002651.
[8] Tab 9 at Def. 003267

would not tell NGL employees that Oxy would hire them if they resigned from Defendant first.[9] If the employee on the NGL list resigned from Defendant and then applied to Oxy, Oxy could hire him, but he would lose service credit and related employee benefits.[10]

4. On December 5, 2003, Defendant's Area Manager Ted Marsh held meetings with various employees including Plaintiff Tuttle and Plaintiff Prince and told them that they could apply to Oxy.[11] However, on Monday, December 8, 2003, Supervisor Scotty Hathaway called Plaintiff Tuttle and told him he could not apply to Oxy and that Marsh would be calling him to talk about it.[12] Marsh never talked to Tuttle, but Hathaway removed Tuttle's name from an interview workshop. Hathaway also told Tuttle it was in his best interest not to apply to Oxy.[13] Nevertheless, Tuttle submitted his resume via e-mail and received a rejection letter.[14]

5. Likewise, Plaintiff Prince was told he could not apply to Oxy.[15] However, Prince gave his resume to Oxy employee Mike Arrellano, and asked Arrellano to deliver it for him.[16] Arrellano was a hiring manager at Oxy. Arrellano told Prince that he could not be hired.[17] Prince called Oxy HR representative Jill Williams who told him that he was on a list of individuals who could not be hired for a specified period of time.[18] Prince asked her how long, and she repeated "a specified period of time" but would not state for what period.[19] Prince also asked and was told that he could not be hired even if he quit Defendant first.

---

[9] *Id.*
[10] *Id.*
[11] Tab 2, Prince Deposition, p. 100, ln. 14-16.
[12] Tab 3, Tuttle 2 Deposition, p. 53, ln, 17- p. 54, ln. 2
[13] Tab 3, Tuttle 2 Deposition at p. 53, ln. 16 – p. 54, ln. 2.
[14] Tab 3, Tuttle 1 Deposition, p. 21, ln. 11-13; p. 22, ln. 8-15.
[15] Tab 2, Prince Deposition, p. 100, ln. 14-16.
[16] Tab 3, Tuttle 2 Deposition, p. 106, ln. 16-21.
[17] Tab 3,Tuttle 2 Deposition, p. 107, ln. 8-20.
[18] Tab 2, Prince Deposition, p. 23, ln. 27-25, p. 24, ln. 14-16.
[19] Tab 2, Prince Deposition, p. 24, ln. 14-18.

6. Plaintiff Brim did not apply to Oxy; however, if he had applied, his application would be futile because Oxy agreed not to hire him.[20]

7. Plaintiffs were subsequently told that they had been "designated NGL."

8. Plaintiffs' employment with Defendant was terminated on or about April 2, 2004, when Defendant's Natural Gas Liquids (NGL) operations were sold to Louis Dreyfus (LDES).[21]

9. Plaintiffs' claims for severance were denied on the basis that "no severance program [was] offered as a part of the same of the NGL assets to Dreyfus."[22] However, JoAnn Yocum, whose employment terminated with Defendant on or about April 2, 2004, contemporaneously with Plaintiffs, and who was immediately hired by Dreyfus (LDES), received a severance package.[23]

ARGUMENT AND AUTHORITIES

10. Plaintiffs concede that the facts do not support a claim for violation of the Age Discrimination in Employment Act (ADEA) or Sherman and Clayton Act. However, Defendant's Motion for Summary Judgment with respect to the Employee Retirement Income Security Act (ERISA) should be denied.

## I. MATERIAL FACT ISSUES PRECLUDE SUMMARY JUDGMENT UNDER ERISA.

11. Plaintiffs agree that Defendant has no obligation to offer a severance plan. However, once a severance plan is offered, it must be administered in a non-discriminatory way. JoAnn Yocum received severance although she, like Plaintiffs, continued on Defendant's payroll through April 2, 2004, and immediately went to work for LDES. Under the terms of the

[20] Tab 4, Day Deposition at p. 48, ln. 1-22.
[21] Tab 3, Tuttle Deposition, p. 92, ln. 9-10.; Tab 2, Prince Deposition, p. 85, ln. 24- p. 86, ln. 8.
[22] Tab 7, Def. 000117 (Brim); Def. 003012 (Tuttle); Def. 003022 (Prince).
[23] Tab 8, Def. 3306, 3309.

ExxonMobil Pipeline Company West Texas Crude System Sale, Special Program of Severance Allowances (SPOSA), in order to participate, an employee had to, on January 30, 2004, be

- A non-represented, regular U.S.-dollar paid ExxonMobil Pipeline Company employee who participates in the ExxonMobil Core Benefit Plans;
- Assigned to ExxonMobil Pipeline Company's West Texas Crude System operations being sold to Occidental Petroleum Company;
- Who is specifically offered the program; and
- Who has not been and is not offered another position by ExxonMobil Pipeline Company, ExxonMobil Corporation, or any of the affiliates or by the purchaser of the assets.[24]

It is undisputed that all three Plaintiffs fall into the first category. Defendant argues that Plaintiffs are not entitled to severance because they were not assigned to the Crude System Operations despite the fact that they worked on the Crude System. Defendant also alleges that Plaintiffs do not qualify because in essence they were offered another position by Defendant to continue to operate the NGL assets. However, if Plaintiffs are not eligible for the severance, then Yocum should not be eligible for the severance on this basis. Yocum continued to be employed by Defendant after the sale to Oxy and immediately went to work for LDES, just like Plaintiffs.

12. Defendant alleges that Plaintiffs must show that Defendant took some action to keep them from becoming eligible for benefits. The action taken by Defendant to keep them from becoming eligible for benefits was preventing them from applying to Oxy. The fact that Plaintiffs were treated differently than Yocum raises an inference of discrimination. Summary judgment is particularly inappropriate where issues of intent and state of mind exist.

[24] Tab 6 at Def. 002976.

13. Plaintiffs have made a prima facie showing of a violation of Section 510 of ERISA. Specifically, Plaintiffs were eligible under the SPOSA; (2) they were qualified for the position from which they were terminated; and (3) they were subjected to an adverse action under circumstances that give rise to an inference of discrimination. On page 16 of its brief, Defendant states, "As indicated above, because [Plaintiffs] were retained in employment by Defendant, they were not eligible for severance connected to the Oxy transaction and because they received employment with LDES, there was no severance available in connection with that transaction." The same statement applies to JoAnn Yocum, yet Yocum received a severance.

14. In the event that the Court concludes that summary judgment is appropriate on the ERISA claim, Plaintiffs respectfully pray that the Court dismiss without prejudice pursuant to FED. R. CIV. P. 41(a)(2), as more fully discussed below, rather than exercising supplemental jurisdiction over the state law claims.

**MOTION TO DISMISS WITHOUT PREJUDICE**

PROCEDURAL HISTORY

15. Plaintiffs filed their Original Complaint on February 3, 2005, alleging certain federal causes of action as well as several state law claims against Defendant. Defendant filed its Original Answer on or about April 5, 2005. Defendant's Motion for Summary Judgment is pending. The case is currently set for trial on June 5, 2006.

ARGUMENT AND AUTHORITIES

16. Plaintiffs seek a dismissal without prejudice because they plan to pursue the common law state claims in state court in Midland County.

17. As a general rule, a federal court should decline to exercise jurisdiction over pendent state claims where all federal claims are dismissed or otherwise eliminated from a case prior to trial. *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999); *Wong v. Stripling*,

881 F.2d 200, 204 (5th Cir. 1989).[25] A federal district court may decline to exercise supplemental jurisdiction if:

(1) a claim raises a novel or complex issue of state law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c). In addition to the statutory provisions of §1367(c), a court should consider the relevant factors of judicial economy, convenience, fairness, and comity as outlined by the Supreme Court in *Carnegie-Melon University v. Cohill*, 484 U.S. 343, 350-51 (1988) and *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). *Batiste v. Island Records, Inc.*, 179 F.3d, 217, 227 (5th Cir. 1999). No single factor is dispositive in this analysis. *Batiste*, 179 F.3d at 227 *and cases cited therein.*

18. Plaintiffs' claims raise a novel or complex issue of state law. Specifically, Texas law recognizes a cause of action for tortious interference with employment contracts terminable at will. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989). Citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001), Defendant alleges that Plaintiffs must show some "independently tortious or unlawful act." Plaintiffs also assert a claim for blacklisting pursuant to TEX. LABOR CODE §52.031. Defendant argues that the statute provides

[25] The term "pendent jurisdiction" has been replaced by the term "supplemental jurisdiction." *Samaad v. City of Dallas*, 940 F.2d 925, 927 n.2 (5th Cir. 1991).

for criminal liability but does not provide a private right of action.[26] Plaintiffs allege that regardless of whether the statute provides a private right of action, it provides a standard for Plaintiffs' claims for negligence per se as well as tortious interference.

19. Balancing the factors of judicial economy, convenience, fairness, and comity, the Court should dismiss Plaintiffs' claims without prejudice. The Court's decision to retain jurisdiction over the pendent state claims is subject to review for abuse of discretion. *Parker & Parsley Petroleum Co. v. Dresser Inds.*, 972 F.2d 580, 585 (5th Cir. 1992). In *Parker & Parsley*, the Fifth Circuit held that the district court abused its discretion in retaining jurisdiction over state law claims after dismissing the federal claims. 972 F.2d at 590. In *Batiste*, the Fifth Circuit held that the district court abused its discretion by dismissing the remaining state claims. 179 F.3d at 227. Comparison of the two cases demonstrates that the court should decline to exercise its supplemental jurisdiction and therefore dismiss Plaintiffs' state claims without prejudice. As a preliminary matter, it should be noted that the court in *Parker & Parsley* found that the remaining legal issues in the case were difficult matters of state law. 972 F.2d at 589. In *Batiste*, the court noted that the remaining state claims did not involve any novel or complex issues of state law. 179 F.3d at 227.

20. In *Parker & Parsley*, the case had been pending for only nine months, the trial was still a few weeks away, and discovery had not been completed. 972 F.2d at 587. In *Batiste*, the case had been pending for three years, and it was one month before trial. *Batiste*, 179 F.3d at 226.

21. In this case, although the Court denied the Plaintiffs' Motion to Extend the Discovery Deadline, in general, the Court did extend discovery with respect to damages. The case has been pending for approximately one year, and the trial date is almost six months away.

---

[26] Defendant's Motion at p. 26.

22. The case is at a relatively early stage and has not consumed sufficient judicial resources that the Court has substantial familiarity with the merits of the case. *See Parker & Parsley*, 972 F.2d at 585. Thus, judicial economy weighs in favor of dismissal without prejudice.

23. The convenience and fairness factors weigh heavily in favor of dismissal without prejudice. This case was transferred to San Antonio from the Midland Division. All three Plaintiffs reside in Midland County, and most witnesses reside in Midland County. A substantial part of the events or omissions giving rise to the claim occurred in Midland County. There is no nexus with San Antonio. Plaintiffs will incur substantial additional costs for travel, attorney's fees, and missed work at their present jobs if the case continues in San Antonio. In contrast, the burden on Defendant as one of the largest corporations in the world is inconsequential.

24. Finally, dismissal would serve the important interest of federalism and comity. *Parker & Parsley*, 972 F.2d at 588. The federal courts are courts of limited jurisdiction and often as well-equipped for determinations of state law as are state courts. *Parker & Parsley*, 972 F.2d at 588-89 *citing Aldinger v. Howard*, 427 U.S.1, 14-15 (1976).

25. Motions for voluntary dismissal should be freely granted unless the nonmoving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002). The fact that additional expense will be incurred in relitigating issues in another forum will not generally support a finding of "plain legal prejudice." *Id.*, 279 F.3d at 318, n.3.

26. As stated by the U.S. Supreme Court, "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward

declining to exercise jurisdiction over the remaining state-law claims." *Gibbs*, 484 U.S. at 350 n.7, *quoted in Parker & Parsley*, 972 F.2d at 586-87.

WHEREFORE, Plaintiffs respectfully pray that the Court deny Defendant's Motion for Summary Judgment, alternatively, that the Court grant their Motion to Dismiss without Prejudice; and for such other and further relief, at law or in equity, to which Plaintiffs may show themselves lawfully and justly entitled.

Respectfully submitted,

By: ______________________
Holly B. Williams
Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P. C.**
550 West Texas, Suite 670
Midland, TX 79702
432-682-7800; 432-682-1112 (fax)

**BRIAN CARNEY**
Texas Bar No. 03832275
1202 W. Texas
Midland, Texas 79701
432-686-8300; 432-686-1949 (fax)

**ATTORNEY FOR PLAINTIFFS JERRY BRIM, MIKE PRINCE AND MIKE TUTTLE**

## CERTIFICATE OF CONFERENCE

On January 23, 2005 Brian Carney attempted to confer with Lawrence D. Smith, Counsel for ExxonMobil Pipeline Co., but Mr. Smith was in trial.

______________________
Holly B. Williams

## CERTIFICATE OF SERVICE

I hereby certify that I have complied with the provisions of FED. R. CIV. P. 5 this 23th day of January, 2005, as follows:

**VIA FIRST CLASS MAIL**
Lawrence D. Smith
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC**
2600 Weston Centre
112 East Pecan Street
San Antonio, TX 78205

**VIA FIRST CLASS MAIL**
David M. Rivet and Susan B. Sanchez
ExxonMobil Pipeline Company
800 Bell Street, Suite 18060
Houston, TX 77002

Holly Williams
Holly B. Williams